## Case No. 7,597a.

### In re KAINE.

[Betts' Scr. Bk. 261.]

Circuit Court, S. D. New York. June, 1852.

EXTRADITION—TREATY WITH GREAT BRITAIN—ARREST UNDER COMMISSIONERS' WARRANT—HABEAS CORPUS—PROCEEDING BEFORE COURT.

[A writ of habeas corpus should not be granted to a prisoner whose commitment by the commissioner has been duly approved by the circuit court, unless all the proceedings before the commissioner and the court are laid before the judge to whom the application is made.]

[Application by Thomas Kaine for a writ of habeas corpus.]

In the matter of Thomas Kaine, claimed as a fugitive from justice, under the treaty between the United States and Great Britain, of the 9th August, 1842.

NELSON, Circuit Justice. This is an application on the relation of Kaine, for a writ of habeas corpus, a prisoner in jail, under the custody of the marshal for the Southern district of New York, charging that he is detained in prison by virtue of an order made by the circuit court of the United States of said district, dated July 9th, 1852, of the April term of said court, purporting to be made under the treaty between the United States and Great Britain of the 9th of August, 1842, and which order remands the prisoner to the custody of the city marshal, to be detained under a commitment previously made by Commissioner Bridgham, under the provisions of the aforesaid treaty; and that since the granting of the said order by the circuit court, the acting secretary of the state for the United States has issued a warrant directing the marshal to surrender the prisoner to the government of Great Britain, in pursuance of the provisions of the said treaty.

The case having been fully heard in the original proceedings before the commissioner, in accordance with the requirements of the treaty, and the act of congress in pursuance thereof, and the decision of the officer, committing the prisoner for the purpose of a surrender to the authorities of Great Britain, as a fugitive from justice, having been subsequently revised and confirmed by the circuit court, I have declined granting the writ of habeas corpus, or taking any step in the matter of the application, until the whole of the previous proceedings in the case, including the evidence, points of counsel, before the commissioner and opinion of the court, were laid before me, that I might be fully apprised of the grounds of the commitment, and of the objections to the same. It is proper to say, also, that I have entertained the case, and called for these proceedings, not with a view to an original hearing of the matter on habeas corpus for the purpose of passing upon the legality or illegality of commitment by the commissioner, or with a view to a revision of the order of commitment by the circuit court, and a final disposition of the same at chambers, but solely for the purpose of ascertaining whether or not the questions involved, or any of them, were of a character so difficult and doubtful, and their final determination by the highest authority of sufficient public interest, to require or justify the submission of them to the supreme court of the United States. By a series of decisions in that court, the questions involved present appropriate subjects of examination in the exer-

cise of its appellate powers. [Ex parte Burford] 3 Cranch [7 U. S.] 448; [Ex parte Bollman] 4 Cranch [8 U. S.] 75; [Ex parte Kearney] 7 Wheat. [20 U. S.] 38; [Ex parte Watkins] 3 Pet. [28 U. S.] 193; [Same Case] 7 Pet. [32 U. S.] 568; [In re Metzger] 5 How. [46 U. S.] 189, 190.

Looking at the case in this aspect, and with this view, I find the first and leading allegation is to the legality of the commitment by the commissioner, and the lawfulness of the detention of the prisoner depends on this, as will be seen hereafter; namely, that he possessed no jurisdiction over the case, and consequently that the warrant of commitment was void. The treaty provides "that the respective judges and other magistrates of the two governments shall have power, jurisdiction," &c., "to issue a warrant," &c. The act of congress 12th August, 1848 [9 Stat. 302], passed to give effect to the provisions of this treaty, with others for extradition, provides, "that it shall and may be lawful for any of the justices of the supreme court, or judges of the several district courts of the United States, and the judges of the several state courts, and commissioners authorized so to do by any of the courts of the United States, are hereby severally vested with powers, jurisdiction," &c. Another section provides, "that it shall be lawful for the courts of the United States, or any of them, to authorize any person or persons to act as commissioner or commissioners under the provisions of this act," &c. The commissioner before whom the proceedings were had has not been appointed under and in pursuance of this act of congress, as one of the officers to carry into execution the provisions of the treaty, but acted in pursuance of his powers derived from an appointment under previous acts of congress, for the discharge of other special and limited duties; and, were it not for a contrary opinion expressed by the learned district judge sitting in the circuit [Case No. 7,-598] I should have entertained a very decided opinion that he possessed no power under the act of 1848, to entertain the proceedings in question; and, that an appointment by the court, in pursuance of the power conferred by that act, was essential to give the commissioner jurisdiction. It is said, however, that, admitting the commissioner possessed no jurisdiction under and in pursuance of the act of 1848, still he was competent to act under and by virtue of the power conferred by the treaty, independently of the act of congress; and that the limitation of authority by the act could not control the provisions of the treaty, even if in conflict with them. We have seen that, according to the treaty, "the respective judges and other magistrates of the two governments" are empowered to arrest and examine the fugitive; and the argument is that the commissioner is a magistrate of the government of the United States, within the meaning of the treaty.

Besides taking bail, and depositions of witnesses in civil cases, these officers by the act of congress of 23d August, 1842, are authorized to arrest offenders for any crime or offence against the United States, and imprison or bail the same. The thirty-third section of the judiciary act [1 Stat. 91] conferred the same power upon justices of the peace of any of the states. The possession of these powers by the commissioner, whose proceedings are in question, constituted him, as alleged, a magistrate within the terms of the treaty, and by virtue of which, as such magistrate, he had a right to act in the premises, notwithstanding the omission, if not exclusion, of these officers by the terms of the act of congress, passed to carry into execution the provisions of the treaty. Whether or not this view will sustain the competency of the commissioner to act under the treaty, independently of any power conferred upon him by the act of 1848, is a question upon which I do not purpose, at this time, to express an opinion. It is sufficient to say that it is one, at least, involved in much difficulty and doubt, and well deserves the consideration and judgment of the supreme court. If the view is a sound one, it would seem to follow, that all justices of the peace, in the several states, possess the like powers to arrest and commit under the treaty, by virtue of their characters as magistrates derived from the powers conferred under the thirty-third section of the judicary act of 1789. We can hardly suppose this to have been the intention of the framers of the treaty.

Another ground of objection to the jurisdiction of the commissioner is, that it was not shown before this officer previous to the institution of the proceedings, or pending the same, that the government of Great Britain, or any officers authorized by the government, had applied or made a demand, for the arrest of Kaine under the treaty; and that an application on behalf of that government was essential to give jurisdiction to act in the matter. The treaty provides "that the United States and her Britannic majesty shall upon mutual requisitions by them, or their ministers, officers, or authorities, respectively made, deliver up to justice all persons," &c. In this case the application for the arrest was accompanied by a request from the British consul, resident in the city of New York, which would seem to bring the case within the words of the treaty. The act of congress is silent on the subject. The language of the treaty is very broad, and if construed literally, would confer authority upon any officer of the British government, however subordinate, and whether civil or military, to make the necessary requisition upon this for the arrest of the fugitive, and so in the case of a requisition of this government upon Great Britain. But this can hardly be the true construction to be given to the treaty. There must be some limitation in respect to the officers of the respective governments authorized to make the requisition. There may

be some difficulty in settling this limitation in the absence of any regulation by act of congress. Perhaps the true construction may be that the requisition shall be made by the government, through the usual organs by which the one holds communication with the other, or by any minister or officer, specially authorized by such government to make the same. It would scarcely seem fit, as it respected either government, that this power to claim, as prosecutor, an arrest and committal of the supposed fugitive, should be lodged in the hands of every and any officer of the same, who might choose to act in the matter. The act of congress provides, that in every case of complaint, and of hearing upon the return of the warrant of arrest, copies of the depositions upon which an original warrant in any such foreign country may have been granted, certified under the hand of the person or persons issuing such warrant, and attested upon the oath of the party producing them to be true copies of the original depositions, may be received in evidence of the criminality of the person so apprehended. The provision makes copies of the depositions used before a foreign magistrate who may have issued a warrant there against the offender, certified by said magistrate, and proved to be copies of the original, competent evidence before the magistrate here acting under the treaty.

The act of congress, doubtless, contemplates that the copy of depositions shall be certified by a magistrate in the foreign country, of competent jurisdiction, to issue the warrant there, for the offence, and to commit for trial and punishment; and to make these evidence, at all, before the magistrate here under the requisition, it should be first shown to his satisfaction by competent proof that the person issuing the warrant, and certifying the depositions, possessed the requisite jurisdiction. Without such jurisdiction the whole proceedings in the foreign country would be coram non judice, and void. Upon the whole, without pursuing the case any further, I am satisfied, upon the view I have taken of the several questions presented, but more especially the first one, involving the power of the commissioner, as well as on account of the importance of settling the construction of the treaty and the act of congress in pursuance thereof, so as to avoid controversies and delays hereafter in these proceedings, it is fit and proper that these questions should be submitted to the consideration and judgment of the supreme court. As I have already stated, the commitment of the prisoner stands upon the authority of the commissioner, the circuit court being of opinion that it was legal and valid, and remanding the prisoner to custody under that order. I shall, therefore, allow the habeas corpus, making it returnable before myself; and when the return is made formally by the marshal (the substance of which is now before me in the preliminary application), I shall direct an order to be entered, in consequence of the difficult and important questions involved, that the case be heard before all the justices of the supreme court of the United States, in banc, at the beginning of the next term of said court. As the making up of the record will be matter of form, it will not be necessary that the prisoner be brought up on the return of the writ before me, but he may remain in custody till the final disposition of the case.

[NOTE. An original application was made directly to the supreme court for habeas corpus on behalf of the prisoner. This application and the adjourned case were considered together. A majority of the court, Mr. Justice Cathron delivering the opinion, were for dismissing the adjourned case for want of jurisdiction, and for denying the application for the writ of habeas corpus; holding that the commissioner had jurisdiction, and that there was sufficient evidence before him to establish the official character of the magistrate before whom Balfe's deposition was taken, and that the copy proved to be a true copy by Meagher was properly received. Justices McLean, Wayne, and Grier concurred in this opinion. Mr. Justice Curtis also concurred in dismissing the adjourned case and denying the application for the writ, but placed his decision on the ground that, if the writ was issued, the court would have no jurisdiction to inquire into the cause of commitment. Mr. Justice Nelson delivered a dissenting opinion, which was concurred in by Mr. Chief Justice Taney and Mr. Justice Daniel. The questions involved failed to meet a judicial determination in consequence of the diversity of opinion among the members of the court. The majority concurred in dismissing the adjourned case and denying the writ of habeas corpus. 14 How. (55 U. S.) 103. The adjourned case, having been dismissed by the supreme court, was subsequently heard by Justice Nelson in chambers, and upon the question of want of jurisdiction of the commissioner the prisoner was discharged. Case No. 7,597.]